# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KING SOLOMON ENTERPRISES INC., d/b/a KSE SUPPLIERS, a New York corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 20 CV 1689 |
| ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC., an Illinois corporation; N B L TEXTILES, INC., an Illinois corporation; GARY BAJTNER, an individual; and NOAM BAJTNER, an individual, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, a New York corporation ("Plaintiff"), by and through its attorneys, Gutnicki LLP, and for its Complaint against GARY BAJTNER, NOAM BAJTNER (collectively, the "Bajtners"), ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. ("Anna's"), and N B L TEXTILES, INC. ("NBL" and collectively with the Bajtners, Anna's, and NBL the "Defendants"), states as follows:

## THE PARTIES

1. Plaintiff is a citizen of New York as it is a New York corporation with its principal place of business at 230 Old Route 17, Hillburn, New York 10931.

2. Anna's is a citizen of Illinois as it is an Illinois corporation with its principal place of business at 8830 Lowell Terrace, Skokie, Illinois 60076.

3. NBL is a citizen of Illinois as it is an Illinois corporation with its principal place of business located at 8830 Lowell Terrace, Skokie, Illinois 60076.

4. The Bajtners are citizens of Illinois who reside at 8830 Lowell Terrace,

Skokie, IL 60076.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction because the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of different states, per 28 U.S.C. §1332(a).

6. This Court also has personal jurisdiction over the Defendants, and venue is proper in this Court, because the Defendants have transacted business in the State of Illinois which is the subject matter of this Complaint.

## FACTUAL BACKGROUND

7. Plaintiff sells wholesale institutional linen goods to businesses around the country.

8. Anna's sells or sold apparel and textile goods to the healthcare industry.

9. Anna's was incorporated on May 3, 2010, and the Illinois Secretary of State's website shows that Anna's president is Dena Bajtner and its secretary is Gary Bajtner.

10. NBL was incorporated June 14, 2011, and its president is Noam Bajtner.

11. NBL sells apparel and textile goods to the healthcare industry.

12. The Bajtners began negotiating the purchase and sale of certain goods by Anna's from Plaintiff around July of 2015.

13. Soon thereafter, Plaintiff and the Bajtners (on behalf of Anna's) entered into an oral agreement (the "Anna's Agreement") whereby Anna's would order certain wholesale linen goods ("Linen Goods") from Plaintiff, and Plaintiff would fill and deliver those orders in exchange for full and timely payment of corresponding invoices issued by Plaintiff for the orders.

14. Pursuant to the Anna's Agreement, the Bajtners began placing orders with Plaintiff for Linen Goods via email or phone.

15. Between August of 2015 and May of 2016, Anna's purchased Linen Goods from

Plaintiff.

16. Plaintiff filled each order, by timely delivering the Linen Goods ordered, thereafter issued corresponding invoices to Anna's for each order.

17. Anna's accepted delivery of the Linen Goods delivered by Plaintiff.

18. Anna's did not object to any of the invoices issued by Plaintiff for the Linen Goods delivered.

19. Despite Plaintiffs full performance, shortly after the Bajtners started placing orders for Anna's, Anna's fell behind on payment of the invoices issued by Plaintiff.

20. Anna's never became current on its past due balance.

21. When Plaintiff inquired with the Bajtners about the past due payment, the Bajtners strung Plaintiff along with delay tactics including empty promises and partial payments.

22. The Bajtners repeatedly assured Plaintiff that Anna's just needed to clear up certain business and cash flow problems and then it would have funds available to become current.

23. Relying on the Bajtners' assurances, Plaintiff continued to fill Anna's orders for more Linen Goods despite the ever growing past due balance.

24. Despite the Bajtners' assurances, Anna's only made partial payments of the amounts due and the amount past due continued to grow.

25. Indeed, after nearly nine months the outstanding amount due by May 2016, was $230,859.26.

26. On information and belief, unbeknownst at the time to Plaintiff, the Bajtners were taking profits from the resale of the Linen Goods and pocketing them for themselves individually.

27. Plaintiff repeatedly sent Anna's comprehensive written statements reflecting the amount due.

28. Rather than pay Anna's debts, the Bajtners simply stopped operating Anna's.

29. Approximately two years later, in July of 2018, the Bajtners (on behalf of NBL) began negotiating with Plaintiff for the purchase of Linen Goods for the purpose of resale.

30. On information and belief, NBL was funded in part or in whole by the income generated by Anna's from the resale of the Linen Goods provided by Plaintiff.

31. During the negotiations, the Bajtners assured Plaintiff that NBL had better business prospects, and that not only would NBL be able to timely pay all amounts due to Plaintiff, but NBL would also pay off the amount past due from Anna's.

32. In reliance on the Bajtners' assurances, Plaintiff entered into an oral agreement with the Bajtners (acting on behalf of NBL) whereby NBL would order the Linen Goods from Plaintiff, and Plaintiff would then fill and deliver the same to NBL in exchange for full and timely payment of corresponding invoices Plaintiff sent to NBL (the "NBL Agreement").

33. Pursuant to the NBL Agreement, the Bajtners began placing orders on behalf of NBL with Plaintiff for Linen Goods.

34. The Bajtners placed each of these orders on behalf of NBL via email or phone.

35. Plaintiff timely filled each order to NBL, and duly invoiced NBL for the same.

36. NBL accepted delivery of the Linen Goods delivered by Plaintiff.

37. NBL did not object to any of the invoices issued by NBL for the Linen Goods delivered.

38. Despite delivery and acceptance, like Anna's, NBL failed to timely pay the invoices issued for the same.

39. NBL never fully paid Plaintiff for any invoice, and despite partial payments, the outstanding amounts due continued to grow.

40. When Plaintiff would inquire with the Bajtners as to when NBL would become current on its past due balance, the Bajtners again strung Plaintiff along with delay tactics, including empty promises and partial payments.

41. The Bajtners told the Plaintiff that NBL just needed to clear up certain business and cash flow problems, and then they would have funds available to become current on both NBL's and Anna's accounts.

42. On information and belief, unbeknownst at the time to Plaintiff, the Bajtners were taking profits from the resale of the Linen Goods and pocketing them for themselves.

43. Nonetheless, Plaintiff continued to fill NBL's orders in reliance on the Bajtners' assurances.

44. Plaintiff repeatedly sent NBL comprehensive statements in writing reflecting the NBL past due Amount, but NBL never brought its account current.

45. By January of 2020 the amount past due had grown to $453,478.03.

46. Therefore, by January of 2020, the Bajtners through two separate corporations had failed to pay to Plaintiff a total of **$684,337.29** for Linen Goods ordered and not just accepted, but in fact resold for profit. A true and correct copy of a statement of account detailing the amount due is attached hereto as Exhibit A.

47. Upon information and belief, all of the foregoing was a direct consequence of the fact that Anna's and NBL: (i) have always been undercapitalized due to the Bajtners failure to provide capital; (ii) are insolvent and being pursued by other creditors; and (iii) had their assets and funds diverted by the Bajtners to the detriment of Plaintiff and for the personal benefit of the Bajtners.

48. The Bajtners further failed to maintain any semblance of an arms-length

relationship among themselves individually, and Anna's and NBL.

49. The Bajtners essentially ran Anna's and NBL as mere façades for their own operations.

50. On information and belief, the Bajtners had no intention or expectation of themselves, Anna's, or NBL ever paying Plaintiff for the Linen Goods they ordered and accepted, despite the profits they garnered from their resale of the Linen Goods.

51. Moreover, the Bajtners failed to maintain any semblance of an arms-length relationship among themselves, thereby running each of Anna's and NBL as a mere façade for their own operations: they ordered $684,337.29 worth of Linen Goods from Plaintiff with no intention at any point of ever paying Plaintiff for the same, and reaped for themselves personally all associated profits stemming from their sale of the Linen Goods to their own customers.

52. All this behavior illustrates that there is such a unity of interest and ownership among the Bajtners, Anna's, and NBL, that the separate personalities of the corporations and the Bajtners never existed.

53. Adherence to the fiction that the Bajtners, Anna's, and NBL are separate entities under these circumstances would promote injustice and inequity resulting in the Plaintiff's being bilked out of $684,337.29 without any recourse for repayment.

54. Plaintiff sent the Bajtners Anna's, NBL, and a notice and demand letter on February 11, 2020, demanding therein that all amounts past due be paid immediately (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit B.

55. Despite demand, Anna's, NBL, and the Bajtners have failed to pay the outstanding balance due.

## COUNT I
## BREACH OF CONTRACT AGAINST ANNA'S

56. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 55 as if fully rewritten herein.

57. For good and sufficient consideration, Anna's entered into the Anna's Agreement with Plaintiff.

58. Pursuant to the Anna's Agreement, Anna's was able to place order for Linen Goods with Plaintiff and Plaintiff would deliver the Linen Goods.

59. Further, Plaintiff would provide a corresponding invoice for goods ordered that was to be paid by Anna's 90 days from the date the invoice was issued.

60. The Bajtners, on behalf of Anna's, placed orders with Plaintiff for Linen Goods via email or phone calls in 2015 and 2016.

61. Plaintiff filled and delivered each of the orders placed by Bajtners on behalf Anna's and sent an invoice for each order to Anna's stating payment was due 90 days from the invoice date.

62. Therefore, Plaintiff fully performed pursuant to the Anna's Agreement.

63. However, Anna's breached the Anna's Agreement by failing to pay the amounts due.

64. The outstanding amount due pursuant to the Anna's Agreement is $230,859.26, exclusive of statutory interest.

65. Despite demand, the amount due from Anna's still has not been paid.

**WHEREFORE**, Plaintiff, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, requests: (a) entry of judgment in its favor against ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. for compensatory damages in the amount of $230,859.26, plus

all applicable interest; (b) entry of judgment in its favor against N B L TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. in the amount of $230,859.26, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT II
## BREACH OF CONTRACT AGAINST NBL

66. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 65 as if fully rewritten herein.

67. For good and sufficient consideration, NBL entered into the NBL Agreement with Plaintiff, wherein the parties agreed that NBL would be able to place orders with Plaintiff for Linen Goods, and Plaintiff would fill, deliver, and issue an invoice for, each such order.

68. In exchange, NBL agreed to pay, fully and timely, the amounts due under each corresponding invoice within 90 days of its issuance.

69. The Bajtners, on behalf of NBL, placed orders with Plaintiff for Linen Goods via email or phone calls.

70. Plaintiff fully performed by timely filling and delivering each order of Linen Goods ordered to NBL, and issuing corresponding invoices to NBL for the same.

71. NBL breached the NBL Agreement by failing to pay the amounts due as agreed.

72. Even after Plaintiff sent the Demand Letter the past due amount pursuant to the NBL Agreement of $453,478.03 (exclusive of statutory interest) has not been paid.

**WHEREFORE**, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, requests: (a) an entry of judgment in its favor against N B L TEXTILES, INC. in the amount of $453,478.03 plus all applicable interest; (b) entry of judgment in its favor against, ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC., GARY BAJTNER, AND NOAM

BAJTNER as alter-egos of N B L TEXTILES, INC. in the amount of $453,478.03, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT III
## UNJUST ENRICHMENT AGAINST ANNA'S

73. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 72 as if fully rewritten herein.

74. Should for any reason it be determined that the Anna's Agreement is not an enforceable contract, in the alternative, Plaintiff argues Anna's was unjustly enriched.

75. Plaintiff conferred a benefit onto Anna's by providing Anna's with Linen Goods.

76. Anna's has unjustly retained a benefit to the Plaintiff's detriment, in that it did not pay Plaintiff the amount due for the Linen Goods it received or return the Linen Goods.

77. Moreover, on information and belief Anna's resold the Linen Goods and either Anna's or its principals retained the full received from the resale of the Linen Goods.

78. As such, Anna's has retained a benefit to Plaintiff's detriment, and such retention violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Plaintiff, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, requests: (a) entry of judgment in its favor against ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. for compensatory damages in the amount of $230,859.26, plus all applicable interest, attorneys' fees and other legal costs; (b) entry of judgment in its favor against N B L TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. in the amount of $230,859.26, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT IV
## UNJUST ENRICHMENT AGAINST NBL

79. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 78 as if fully rewritten herein.

80. Should for any reason it be determined that the NBL Agreement is not an enforceable contract, in the alternative, Plaintiff argues NBL was unjustly enriched.

81. Plaintiff conferred a benefit onto NBL by providing NBL with Linen Goods.

82. NBL has unjustly retained a benefit to the Plaintiff's detriment, in that it did not pay Plaintiff the amount due for the Linen Goods it received or return the Linen Goods.

83. Moreover, on information and belief NBL resold the Linen Goods for a profit and either retained the amounts received from the resale or distributed it to its principals.

84. As such, NBL has retained a benefit to Plaintiff's detriment, and such retention violates the fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, requests: (a) an entry of judgment in its favor against N B L TEXTILES, INC. in the amount of $453,478.03 plus all applicable interest; (b) entry of judgment in its favor against, ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of N B L TEXTILES, INC. in the amount of $453,478.03, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT V
## QUANTUM MERUIT AGAINST ANNA'S

85. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 84 as if fully rewritten herein.

86. Should for any reason it be determined that the Anna's Agreement is not an enforceable contract, in the alternative, Plaintiff argues the following in the alternative.

87. Plaintiff provided to Anna's all the Linen Goods it had ordered for the benefit of Anna's.

88. Plaintiff did not intend to provide all the ordered Linen Goods gratuitously as evidenced by the invoices issued.

89. Anna's accepted all the ordered Linen Goods and never attempted to cancel or otherwise deny them.

**WHEREFORE**, Plaintiff, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS, requests: (a) entry of judgment in its favor against ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. for compensatory damages in the amount of $230,859.26, plus all applicable interest, attorneys' fees and other legal costs; (b) entry of judgment in its favor against N B L TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. in the amount of $230,859.26, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT VI
## QUANTUM MERUIT AGAINST NBL

90. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 89 as if fully rewritten herein.

91. Should for any reason it be determined that the NBL Agreement is not an enforceable contract, in the alternative, Plaintiff argues the following in the alternative.

92. Plaintiff provided to NBL all the Linen Goods it had ordered for the benefit of NBL.

93. Plaintiff did not intend to provide all the ordered Linen Goods gratuitously.

94. NBL accepted all the ordered the Linen Goods and never attempted to cancel or otherwise deny them.

**WHEREFORE**, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS requests: (a) an entry of judgment in its favor against N B L TEXTILES, INC. for compensatory damages in an amount in excess of $453,478.03, plus statutory interest, and reasonable attorney fees, and other legal costs; (b) entry of judgment in its favor against, ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of N B L TEXTILES, INC. in the amount of $453,478.03, plus all applicable interest; and (c) any such other and further relief as the Court may deem just and equitable.

## COUNT VII
## ACCOUNT STATED AGAINST ANNA'S

95. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 94 as if fully rewritten herein.

96. Plaintiff sent Anna's itemized invoices for all of the orders for Linen Goods it filled.

97. Anna's received all invoices and orders from Plaintiff.

98. Anna's has failed to object to said invoices within a reasonable time and has otherwise acquiesced to the existence and correctness of the account stated in said invoices through its conduct.

99. Anna's has failed to pay Plaintiff the amounts owing pursuant to said invoices.

100. The amount outstanding on the invoices provided is $230,859.26.

101. As a result of the failure of Anna's to pay Plaintiff according to said invoices, Plaintiff has suffered financial damages and losses in the amount of $230,859.26 in actual damages, plus the cost of this suit.

**WHEREFORE**, Plaintiff, KING SOLOMON ENTERPRISES INC., D/B/A KSE

SUPPLIERS, requests: (a) entry of judgment in its favor against ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. for compensatory damages in the amount of $230,859.26, plus all applicable interest, attorneys' fees and other legal costs; (b) entry of judgment in its favor against N B L TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC. in the amount of $230,859.26, plus all applicable interest; and (c) any such other and further relief as this Honorable Court may deem just and equitable.

## COUNT VIII
## ACCOUNT STATED AGAINST NBL

102. Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 101 as if fully rewritten herein.

103. Plaintiff rendered and forwarded itemized invoices to NBL in regard to all the Linen Goods NBL had ordered and that Plaintiff had provided to NBL.

104. NBL received all said invoices from Plaintiff.

105. An account was stated in writing between Plaintiff and NBL, showing a balance due of $453,478.03.

106. NBL has failed to object to said invoices within a reasonable time and has otherwise acquiesced to the existence and correctness of the account stated in said invoices through its conduct.

107. NBL has failed to pay Plaintiff the amounts owing pursuant to said invoices.

108. As a result of the failure of NBL to pay Plaintiff according to said invoices, Plaintiff has suffered financial damages and losses in the amount of $453,478.03 in actual damages, plus the cost of this suit.

**WHEREFORE**, KING SOLOMON ENTERPRISES INC., D/B/A KSE SUPPLIERS

requests: (a) an entry of judgment in its favor against N B L TEXTILES, INC. for compensatory damages in an amount in excess of $453,478.03, plus statutory interest and reasonable attorney fees and other legal costs; (b) entry of judgment in its favor against, ANNA'S HEALTHCARE APPAREL AND TEXTILES, INC., GARY BAJTNER, AND NOAM BAJTNER as alter-egos of N B L TEXTILES, INC. in the amount of $453,478.03, plus all applicable interest; and (c) any such other and further relief as the Court may deem just and equitable.

Dated: March 5, 2020

Respectfully submitted,

**KING SOLOMON ENTERPRISES INC., d/b/a KSE SUPPLIERS,**

/s/ Kara Allen
Aharon S. Kaye
Kara Allen
GUTNICKI LLP
4711 Golf Road, Suite 200
Skokie, Illinois 60076
Telephone: (847) 745-6594
akaye@gutnicki.com
kallen@gutnicki.com